UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Alishea Simes, as parent and natural guardian of Julian Simes; and Veronica Jones, as parent and natural guardian of Christopher Jones,

    Plaintiffs,

vs.

Paul Ford, in his individual capacity as a police officer of the City of St. Paul; the City of St. Paul; and John Does Nos. 1 through 5, in their individual capacities as police officers of the City of St. Paul,

    Defendants.

---

Case No. 04-4831(JRT)FLN

COMPLAINT

JURY TRIAL DEMANDED
UNDER FRCP 38(b)

For their Complaint, plaintiffs Alishea Simes, as parent and natural guardian of Julian Simes ("Julian"), and Veronica Jones, as parent and natural guardian of Christopher Jones ("Christopher"), hereby state and allege as follows:

1.     This is an action for money damages for injuries sustained by 11-year old Julian Simes and 12-year old Christopher Jones as a result of an assault and violation of their constitutional rights by St. Paul police officers Paul Ford and John Does Nos. 1 through 5. The assault violated Julian and Christopher's federal civil rights and constitutes tortious behavior on behalf of all of the defendants.

2.     Plaintiffs bring this action pursuant to 42 U.S.C. §§1981, 1983, 1986 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution and 28 U.S.C. §§1331 and 1343(3). The aforementioned statutory and constitutional provisions confer original jurisdiction of this Court over this matter. Plaintiffs further invoke the pendant jurisdiction of this Court to decide herein claims arising under the law of the State of Minnesota.

3.     The amount in controversy exceeds $75,000, excluding interest and costs.



SCANNED
NOV 1 9 2004
U.S. DISTRICT COURT MPLS

4.  Plaintiffs bring this action as co-plaintiffs as it "arises out of the same transaction, occurrence, or series of transactions or occurrences" under Rule 20 of the Federal Rules of Civil Procedure.

5.  Plaintiffs bring this action not only for money damages, but for the express purpose of requiring changes in the policies and procedures of the St. Paul Police Department with respect to an appropriate system of discipline for excessive force, a thorough and complete investigative process for handling citizen complaints of excessive force, an effective early warning system to identify, retrain, re-educate and/or remediate officers with a threshold number of excessive force complaints, and the disciplining and reassigning of officers with a high number of citizen complaints.

6.  Alishea and Julian Simes are and were at all times material herein, citizens of the United States and residents of the City of St. Paul, County of Ramsey, State of Minnesota.

7.  Veronica and Christopher Jones are and were at all times material herein, citizens of the United States and residents of the City of St. Paul, County of Ramsey, State of Minnesota.

8.  Defendant Paul Ford was at all times mentioned herein a duly appointed and acting officer of the police department of the City of St. Paul.

9.  Defendant John Does Nos. 1 through 5 were at all times mentioned herein St. Paul police officers whose identities are unknown to plaintiff at present.

10. On November 21, 2003, Julian Simes was eleven years old and was a student at Webster Enrichment Magnet, a K-6 elementary school in St. Paul. Julian is African-American.

11. On November 21, 2003, Christopher Jones was twelve years old and was a 7th grade student at Hazel Park Middle School in St. Paul. Christopher is African-American.

12. At approximately 7:00 p.m. on November 21, 2003, Julian and Christopher were playing with their 13-year old friend Jacob Whaley, an 8th grade student at Cleveland Middle School, in a neighborhood park, Eileen Weida Park, located at the corner of Burr and Tedesco in St. Paul.

13. Julian, Christopher and Jacob ("the boys") were playing in the park for approximately ten minutes when they noticed a dark-colored van sitting next to the park with no lights on. The van was occupied by defendant Ford.

14. Because they were concerned about the van, the boys decided to leave the park. As they were leaving, Ford began to follow them in the van and then turned on the van's lights and started speeding toward them. Fearing an attack, a shooting or a kidnapping, the boys began to run.

15. Unbeknownst to the boys, a strong-arm robbery had occurred at the St. Paul Indoor Tennis Club at 600 Desoto Street earlier on the evening of November 21, 2003. The robbery was committed by a single suspect, described as a tall, black male.

16. Defendant Ford was in the maroon-colored, undercover police van with no police markings when he heard the call go out about the robbery and the corresponding description of the sole, black male suspect.

17. As Ford drove down Tedesco, he saw the three boys, and claims that he believed they matched the description of the sole robbery suspect.

18. Although Officer Ford admits he was looking for a tall black male, he further claims that all of the boys appeared tall with thin builds. In fact, Julian and Christopher were both 5'4" tall and, even Jacob Whaley, the older boy (who was not black), was only 5'9" tall.

19. After seeing the three boys, Ford pulled over his police van, turned off his lights and, after watching the boys begin to walk away from the park, turned on his vehicle's lights and began to pursue them in his vehicle.

20. As the boys fled from their unknown pursuer, Ford got out of his van to chase the boys on foot. Ford was not wearing a police uniform, nor did he wear any clothing that would have identified him as a police officer. Ford also failed to identify himself verbally as a police officer when he began to chase the boys.

21. In fear for their lives, Christopher and Julian continued to run away from their unknown pursuer. Jacob Whaley ran in another direction and was never apprehended.

22. As the boys fled from Ford, a large number of St. Paul police squad cars pulled up, cutting off Christopher and Julian's avenue of escape, and they both immediately stopped, ceding to the now-apparent police authority, and put their hands in the air.

23. Defendant Ford then pointed his gun at Christopher and yelled "Where's the gun?" to which Christopher replied, "I'm just a kid. I'm only twelve." When Christopher tried to show Officer Ford his student i.d. card, Ford told him to "put his f***king hands up or [he] would shoot [him]."

24. Defendants John Does Nos. 1-5 and/or Ford then knocked Christopher to the ground and struck him numerous times while asking him where the gun was.

25. At or about the same time, defendants John Does Nos. 1-5 and/or Ford knocked Julian to the ground and punched and kicked him numerous times on his head and torso while demanding to know where the gun was. Eleven-year old, 120-pound Julian, who has a learning disability and does not speak well, was crying hysterically as the officers repeatedly struck him and demanded compliance.

26. Both Christopher and Julian were handcuffed and placed in separate squad cars. They were both interrogated about the whereabouts of a gun and the boys continued to profess their innocence. They were eventually released and told to "go the f*** home." Terrified, they ran home crying to Christopher's mother.

27. Both Christopher and Julian went to Childrens Hospital on the evening of November 21, 2003, for treatment of their injuries. Bruising was noted on Christopher's back and "red, raised linear marks" were present on both of his wrists. In Julian's case, doctors noted that he was frightened and anxious and, among other things, doctors documented swelling and abrasions above his right eyebrow.

4

28. Both Julian and Christopher have suffered continuing emotional distress as a direct result of this incident.

29. Defendants have tried to cover up their misconduct by filing false and misleading police reports in this matter or, in some cases, none at all.

30. The City of St. Paul has failed to take any meaningful disciplinary action against defendants as a result of their use of excessive force and racial profiling in this incident. The St. Paul Police Department's Internal Affairs investigation failed to find any wrongdoing on the part of defendant Ford and the other John Doe defendants who used force on two innocent African-American pre-teens.

31. Due to the fact that the City of St. Paul has historically failed to discipline its police officers for use of excessive or unreasonable force, officers do not feel constrained from using unreasonable force or improper tactics knowing the department will not fully investigate their conduct, nor impose negative sanctions, based on their observations of officers with significant complaint histories who have had no departmental discipline imposed on them.

32. The effect of the department's failure to discipline was to lead other St. Paul police officers to believe they could get away with the use of excessive force with impunity.

33. Plaintiffs demand a jury trial as to all issues of fact herein.

## COUNT ONE

### CIVIL RIGHTS VIOLATIONS BY DEFENDANTS

34. Plaintiff realleges the allegations contained in paragraphs 1 through 33 herein against all of the defendants.

35. By the actions described above, defendants, under color of state law, violated and deprived plaintiffs of their clearly established and well-settled civil rights to be free from: the use of excessive and unreasonable force; the deprivation of liberty without due process of law; summary

punishment; failure to intervene; false arrest and detention; illegal interrogation; and verbal abuse and harassment.

36. Defendants subjected plaintiffs to these deprivations of their rights either maliciously or by acting with reckless disregard for whether plaintiffs' rights would be violated by their actions.

37. As a direct and proximate result of the acts and omissions of defendants, plaintiffs were damaged in an amount exceeding Seventy-Five Thousand ($75,000) Dollars.

38. Plaintiffs are entitled to punitive damages in an amount exceeding Seventy-Five Thousand ($75,000) Dollars.

39. Plaintiffs are entitled to recovery of their reasonable attorneys' fees under 42 U.S.C. §1988.

## COUNT TWO

### CIVIL RIGHTS VIOLATIONS BY DEFENDANT CITY OF ST. PAUL

40. Plaintiffs reallege the allegations contained in paragraphs 1 through 39 herein against defendant City of St. Paul.

41. Before November 21, 2003, defendant City of St. Paul, with deliberate indifference to the rights of citizens, initiated, tolerated, permitted, failed to correct, promoted, and ratified a custom, pattern and practice on the part of its police personnel, including defendant Ford and the John Doe defendants, of unjustified, unreasonable and illegal use of force and other forms of intimidation, coercion and harassment, including improper racial profiling.

42 Defendant City of St. Paul intentionally, knowingly, recklessly or with deliberate indifference to the rights of the citizens of St. Paul failed to supervise, instruct and train defendant Ford and the John Doe defendants to refrain from unlawfully using excessive and unreasonable force and discriminating against citizens on the basis of race.

43. As of November 21, 2003, defendant City of St. Paul maintained a custom and practice of deliberate indifference to citizen complaints alleging misconduct and failed to discipline, remediate, counsel or retrain officers with histories of improper, abusive and intentional misconduct.

44. Defendant City of St. Paul, directly or indirectly, under color of law, approved or ratified the unlawful, deliberate, malicious, reckless or wanton conduct of defendant Ford and the John Doe defendants.

45. As a direct and proximate result of the aforesaid acts and omissions, systematic flaws, policies and customs of the defendant City of St. Paul, defendants assaulted and discriminated against plaintiffs and engaged in the other above-described conduct in violation of plaintiffs' civil rights to their compensatory damage in an amount exceeding Seventy-Five Thousand ($75,000) Dollars.

46. Plaintiffs are entitled to recovery of their reasonable attorneys' fees and costs under 42 U.S.C. §1988.

## COUNT THREE

## VIOLATIONS OF 42 U.S.C. § 1981

47. Plaintiffs reallege the allegations contained in paragraphs 1 through 46 herein against all defendants.

48. Defendants committed the aforesaid acts against plaintiffs as a direct result of plaintiffs' race or national origin.

49. Defendants' actions were racially motivated and discriminatory in violation of 42 U.S.C. § 1981 and violated, among other things, plaintiffs' rights to due process of law and directly and proximately caused plaintiffs to suffer the injuries and incur the damages set forth herein.

50. As a direct and proximate result of the acts and omissions of all defendants, plaintiffs were damaged in amount exceeding Seventy-Five Thousand ($75,000) Dollars.

51. Plaintiffs are entitled to recovery of their reasonable attorneys' fees under 42 U.S.C. §1988.

## COUNT FOUR

### MINNESOTA HUMAN RIGHTS ACT VIOLATIONS BY ALL DEFENDANTS

52. Plaintiffs reallege the allegations contained in paragraphs 1 through 51 herein against all defendants.

53. Defendants discriminated against plaintiffs on the basis of race or other discriminatory reasons in violation of provisions of the Minnesota Human Rights Act.

54. Defendants committed an unfair discriminatory practice by intentionally aiding, abetting, inciting, compelling, or coercing each other to engage in violations of the Minnesota Human Rights Act, in violation of Minn. Stat. § 363.03, subd. 6.

55. Defendants committed these acts either maliciously or by acting with a reckless disregard for whether plaintiffs' rights would be violated by their actions.

56. As a direct and proximate result of the acts and omissions of all defendants, plaintiffs were damaged in an amount exceeding Seventy-Five Thousand ($75,000) Dollars.

57. Plaintiffs are entitled to recovery of their reasonable attorneys' fees under Minn. Stat. § 363.14, subd. 3.

## COUNT FIVE

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

58. Plaintiffs reallege the allegations contained in paragraphs 1 through 57 herein against all defendants.

59. Defendants intentionally inflicted emotional distress on plaintiffs.

60. As a direct and proximate result of this intentional infliction of emotional distress, plaintiffs suffered damages in an amount exceeding Seventy-Five Thousand ($75,000) Dollars.

## COUNT SIX

## CONSPIRACY TO VIOLATE CIVIL RIGHTS

61. Plaintiffs reallege the allegations contained in paragraphs 1 through 60 herein against all defendants.

62. By the conduct described above, these defendants conspired to violate plaintiffs' civil rights. Said conspiracy consists of, inter alia, engaging in, consenting to, ratifying and acquiescing in: the filing of false police reports and statements; making false statements to investigators; and other violations of plaintiffs' civil rights as described above.

63. As a direct and proximate result of said conspiracy, plaintiffs have been damaged in an amount exceeding Seventy-Five Thousand ($75,000) Dollars.

64. Plaintiffs are entitled to punitive damages in an amount exceeding Seventy-Five Thousand ($75,000) Dollars as against any individual co-conspirator.

89. Plaintiffs are entitled to recovery of their reasonable attorneys' fees under 42 U.S.C. §1988.

WHEREFORE, plaintiffs pray for judgment against defendants as follows:

1. As to Count One, a money judgment against all defendants for compensatory and punitive damages in an amount in excess of Seventy-Five Thousand ($75,000) Dollars and against defendants Ford and John Does Nos. 1-5 for punitive damages in an amount in excess of Seventy-Five Thousand ($75,000) Dollars, together with reasonable attorneys' fees, costs and disbursements under 42 U.S.C. §1988 and prejudgment interest;

2. As to Count Two, a money judgment against defendant the City of St. Paul for compensatory damages in an amount in excess of Seventy-Five Thousand ($75,000) Dollars together with reasonable attorneys' fees, costs and disbursements under 42 U.S.C. §1988 and prejudgment interest;

3. As to Count Three, a money judgment against all defendants for compensatory damages in an amount in excess of Seventy-Five Thousand ($75,000) Dollars and against defendants Ford and John Does Nos. 1-5 for punitive damages in an amount in excess of Seventy-Five Thousand ($75,000) Dollars, together with reasonable attorneys' fees, costs and disbursements under 42 U.S.C. §1988 and prejudgment interest;

4. As to Count Four, a money judgment in favor of plaintiffs and against all defendants for damages in an amount in excess of Seventy-Five Thousand ($75,000) Dollars, together with reasonable attorneys' fees, costs and disbursements, and prejudgment interest under Minn. Stat. § 363.14, subd. 3;

5. As to Count Five, a money judgment against defendants Ford and John Does Nos. 1-5 for compensatory and punitive damages in an amount in excess of Seventy-Five Thousand ($75,000) Dollars, together with pre-judgment interest and his costs and disbursements;

6. As to Count Six, a money judgment against all defendants for compensatory damages in an amount in excess of Seventy-Five Thousand ($75,000) Dollars and against defendants Ford and John Does Nos. 1-5 for punitive damages in an amount in excess of Seventy-Five Thousand ($75,000) Dollars, together with reasonable attorneys' fees, costs and disbursements under 42 U.S.C. §1988 and prejudgment interest;

7. An order mandating a change in police policy and procedures which ensures an appropriate system of discipline for acts of misconduct and an effective early warning system to identify, retrain, re-educate and/or remediate officers with a threshold number of citizen complaints; and

8. For such other and further relief as this Court may deem just and equitable.

Dated this 18th day of November, 2004.

FLYNN, GASKINS & BENNETT, L.L.P.

By:_____

Robert Bennett (6713)
Eric Hageman (258180)
Andrew Noel (322118)
*Attorneys for Plaintiffs*
Suite 2900
333 South Seventh Street
Minneapolis, Minnesota 55402
(612) 333-9500

ch/16813/complaint

11